STATE OF NEBRASKA, APPELLEE, v. DONALD F. GRAY, APPELLANT.
479 N.W.2d 796

Filed February 14, 1992.    No. 90-1182.

Thomas J. Garvey, Sarpy County Public Defender, and Robert C. Wester for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Donald F. Gray appeals his conviction during a bench trial in the county court for Sarpy County and sentence for third degree assault, see Neb. Rev. Stat. § 28-310(1)(b) (Reissue 1989), a Class I misdemeanor punishable by a maximum of 1 year's imprisonment, a $1,000 fine, or both, pursuant to Neb. Rev. Stat. § 28-106 (Reissue 1989), which prescribes no minimum sentence of imprisonment or fine for a Class I misdemeanor.

Section 28-310(1)(b) states in pertinent part: "A person commits the offense of assault in the third degree if he . . . [t]hreatens another in a menacing manner."

In the late hours of a July evening in 1989, the victim, a 9-year-old boy who was 4 feet tall and weighed around 120 pounds, was involved in playing darts at the River City Softball Complex with 28-year-old Gray, who was 5 feet 7 inches tall and weighed 184 pounds, a bodybuilder who had won the title of "Mr. Nebraska . . . collegiate." Also involved in the dart matches was Gray's friend, Tim Pool. While the trio played their dart games in the upper level of the complex, the victim's parents were downstairs with other family members. During one of the dart games, an apparent dispute occurred concerning the victim's contribution toward payment for the game. When Gray and Pool began to chase the victim around the upper level, the frightened victim ran to the men's room, went inside, and hid himself in a toilet stall, which he locked. Gray and Pool entered the men's room and beat on the door of the stall

containing the victim, but soon left. When the victim believed it was safe, he left the stall. At that point, Gray and Pool reentered the men's room. Gray picked up the victim and held the victim's legs as Pool grasped the victim around the waist. While the victim was "afraid," head down, and nearly vertical, Gray and Pool lowered the victim's head into a urinal to the point that the boy's head became wet from water in the urinal. Afterward, Gray and Pool left the victim sitting on the floor of the men's room and crying, and returned to the area where the dart games had been played. Thereafter, when the victim informed his parents about the incident, the victim's father and uncle confronted Gray, who admitted the events in the men's room. Officers from the Sarpy County Sheriff's Department appeared at the scene in response to a call from the manager of the complex.

The preceding account of the incident was, by and large, established through evidence presented by the State. At the conclusion of the State's case in chief, Gray moved for dismissal, contending that the State had failed to prove a prima facie case of assault. When the dismissal motion was overruled, Gray proceeded to testify, expressly and specifically contradicting the State's evidence that he held the victim aloft and then lowered the victim's head into the urinal. For the most part, Gray testified that it was Pool, not Gray, who lowered the victim into the urinal. At the conclusion of Gray's evidence and without Gray's renewal of a motion for dismissal, the State declined to offer rebuttal evidence. After summations by the lawyers, the court found Gray guilty of third degree assault, the charge and conviction involved in Gray's appeal. Later, after a presentence report, the county court, on September 21, 1990, sentenced Gray on the assault conviction—15 days' imprisonment and a $75 fine.

In Gray's appeal to the district court for Sarpy County, Gray's conviction and sentence were affirmed. In his appeal to this court, Gray claims: "1. The trial court erred as a matter of law by not dismissing at the close of Appellee's case. 2. The trial court erred and abused its discretion by imposing an excessive sentence which was disproportionate to the crime."

Although Gray contends that the State failed to prove a

prima facie case of assault and, hence, the court should have sustained Gray's dismissal motion at the end of the State's case in chief, both Gray and the State, in a knee jerk response to Gray's assignments of error without a careful examination of the record, overlook a fundamental and longstanding principle for appellate review: A defendant who moves for dismissal or a directed verdict at the close of evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction. See, *State v. Tingle, ante* p. 558, 477 N.W.2d 544 (1991); *State v. Coburn,* 218 Neb. 144, 352 N.W.2d 605 (1984); *State v. Hellbusch,* 213 Neb. 894, 331 N.W.2d 815 (1983); *Henggler v. State,* 173 Neb. 171, 112 N.W.2d 762 (1962).

By introduction of evidence after the court's ruling on the dismissal motion, Gray has waived any appellate challenge to the correctness of the trial court's ruling on Gray's dismissal motion at the end of the State's case in chief. We have recounted some of the evidence to show that there was not a complete failure of proof on an essential element of the crime charged and thereby dispel any notion about availability of the plain error doctrine concerning sufficiency of evidence to support Gray's conviction. Also, the factual background for Gray's conviction supplies the setting for our considering Gray's claim that an excessive sentence was imposed on him.

In conjunction with Gray's claim that the county court imposed an excessive sentence, we have examined the presentence report on Gray, which discloses that he has had several encounters in the criminal justice system, including the following convictions: theft (1982); reckless driving (1984); drunk driving (1986); disturbing the peace (1987); drunk driving, which was Gray's second offense (arrest: August 19, 1989; conviction: May 10, 1990); and drunk driving, which was treated as Gray's second offense (arrest: January 3, 1990; conviction: May 10, 1990).

" ' "A sentence imposed within the statutory limits will not

be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed." ' " *State v. Witt, ante* p. 400, 402-03, 476 N.W.2d 556, 558-59 (1991). Accord, *State v. Jameson, ante* p. 109, 474 N.W.2d 475 (1991); *State v. Staten,* 238 Neb. 13, 469 N.W.2d 112 (1991). We have also stated:

> [I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant.

*State v. Stranghoener,* 208 Neb. 598, 603, 304 N.W.2d 679, 682 (1981). Accord *State v. Witt, supra.*

In view of the foregoing, there is no abuse of discretion in the sentence imposed on Gray.

Therefore, the judgment of the district court, affirming Gray's county court conviction and sentence, is affirmed.

AFFIRMED.